Shametra Monche COLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–95–00094–CR.

Court of Appeals of Texas, Tyler.

April 30, 1996.

---

John Heath, Nacogdoches, for appellant.

Tim James, Nacogdoches, for appellee.

HOLCOMB, Justice.

Shametra Monche Cole ("Appellant") appeals from a jury trial in which she was tried for the murder of Burle Wallace. The jury found Appellant guilty of the lesser included offense of voluntary manslaughter and assessed her punishment at fifteen years imprisonment. Appellant raises five points of error on appeal, all involving the inadequacy of the jury charge on her self-defense claim. We will affirm the trial court's judgment.

On July 7, 1994 at approximately 6:00 p.m., the Appellant, 15 year old Shametra Monche Cole, drove to the home of Burle Wallace ("Burle"), another teenager. Burle was on the porch with his girlfriend, Jennifer Pleasant ("Jennifer"). Appellant was angry and accused Jennifer of spreading rumors that Appellant was dating someone she stated she was not. The two girls began arguing fiercely. Burle joined in the argument. The testimony conflicts at this point. Witnesses variously testified that Burle either pushed, slapped, or attempted to restrain Appellant, causing her to fall. During the struggle between Burle and Appellant, Jennifer backed off. Appellant shook her finger in Burle's face, then attempted to strike Burle with a bicycle tire. Burle and Appellant began wrestling over the tire. Neighbors separated Burle and Appellant, and Burle and Jennifer went into his house. However, Appellant broke away from the individuals restraining her, ran into Burle's house, and tried to strike him with an aluminum baseball bat. Again, neighbors and Burle's mother, Alice Wallace, separated Burle and Appellant and forced Appellant outside. Outside, Burle took the aluminum bat away from Appellant. Appellant testified Burle struck her. Appellant then threatened Burle and Jennifer stating either "I'm going to kill you," or "someone will show blood tonight." At this point, although the record is not clear, it appears Appellant went home and got her pistol. On direct examination, Appellant testified as follows concerning the reason she got the pistol:

"Q  What was the purpose of you having the gun on you at that point in time? Just tell the jury.

A  Okay. So he wouldn't jump on me no more."

However, on cross-examination, Appellant testified she had purchased the gun on the street three weeks prior to the incident. She stated that she bought the gun for protection, as she was afraid of the neighborhood streets where she lived. As we understand the record, Appellant lived next door to where the fight occurred.

When Appellant returned with the gun in her pocket, she sat down and talked with Alice Wallace for twenty or thirty minutes. Mrs. Wallace testified she was trying to offer Appellant reassuring advice and to calm Appellant by reminding her she had a child to look after and had too much to lose by causing harm or getting harmed. While this discussion was going on, Burle was behind Mrs. Wallace and Appellant making disparaging remarks. Mrs. Wallace testified she was also trying to soothe Burle and told him to remain in the house, which he did. Appellant then testified:

Q  Okay.  Where did you then go?

A  I was walking up the street.

Q  Okay.  Why were you walking up the street?

A  'Cause Alice told me to keep confusion down, you know, just to leave.

Q  Okay.  And you did that.

A  Uh-huh.

Sometime later, Burle snuck out of the house, went to a bootlegger, and obtained a quart of beer. Burle was walking in the direction of his house at approximately 10:15 p.m., when he met Appellant several houses down from where they lived. Appellant's version of what happened next was disputed by several eye-witnesses. Appellant testified Burle began "hippity-hopping" toward her holding a paper sack in his left hand and a metal object in his right hand. Appellant could not identify the metal object, but thought it was a knife. Although Appellant

stated Burle did not say anything, Appellant testified she was frightened and convinced Burle was attacking her with a knife. Appellant pulled the pistol out of her pocket and fired once. Burle died at the hospital.

Near Burle's body, police found a sharp dental tool used to probe teeth. Jennifer had previously stolen the dental tool and given it to Burle. Two officers testified that the dental tool could kill or cause serious injury. A teenage witness, Ricky Wyrick, found the dental tool three or four feet from Burle's body and tossed it toward a nearby tree where police found it.

In its instructions to the jury, the trial court submitted a standard, or perfect, self-defense charge to the jury. The self-defense charge did not restrict the Appellant's right of self-defense.

In her first point of error, Appellant alleges that the trial court erred in refusing to submit to the jury an instruction on provoking the difficulty. Appellant argues that she presented evidence that she provoked the victim, and the trial court should have charged the jury with an instruction that a defendant is not entitled to claim self-defense if she provoked the difficulty.

■■■ We review the record in a light most favorable to Appellant in determining whether error occurred in failing to present a defensive charge. Upon proper request, a trial court must instruct the jury on every defensive theory raised by the evidence. *Smith v. State,* 676 S.W.2d 584, 586 (Tex.Cr. App.1984). This is true whether the evidence is strong, feeble, unimpeached, or contradicted. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Cr.App.1987); *Mullins v. State,* 767 S.W.2d 166, 168 (Tex.App.—Houston [1st Dist.] 1988, no pet.). A defendant's testimony alone may be sufficient to raise a defensive theory requiring an instruction in the jury charge. *Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Cr.App.1984); *Pierini v. State,* 804 S.W.2d 258, 260 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

■■■ We disagree with Appellant's argument that the trial court erred in failing to submit an instruction on provoking the difficulty. Texas law authorizes the use of dead-

ly force against another in self-defense to a threat of death or serious bodily injury. Tex. Penal Code Ann. §§ 9.31, 9.32 (Vernon 1994). A trial court must instruct the jury on every defensive theory raised by the evidence. *Smith v. State,* 676 S.W.2d 584, 586 (Tex.Cr.App.1984). However, proof that a defendant provoked the victim limits the defendant's right of self-defense. *Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex.Cr.App. 1986). "A charge on provoking the difficulty is properly given when self-defense is an issue; there are facts in evidence which show that the deceased made the first attack on the defendant; and the defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased." *Id.* The defendant must have a specific intent to goad the victim into attacking the defendant so that the defendant can then kill or injure the victim. *Bennett v. State,* 726 S.W.2d 32, 35 (Tex.Cr.App. 1986).

Appellant has cited *Banks v. State* for authority that either the State or the defendant may request an instruction on provoking the difficulty if there is any evidence that the defendant provoked the altercation. In *Banks,* the defendant requested a provoking the difficulty charge, and the court gave such charge. However, the trial court refused to give a right to arm instruction. *Banks v. State,* 656 S.W.2d 446, 446–47 (Tex.Cr.App. 1983). The *Banks* case stands for the proposition that when a court gives a provoking the difficulty charge, the defendant is entitled to a right to arm instruction if supported by the evidence, without regard for which party may have requested the provoking the difficulty charge.

In the present case, Appellant insists that she was entitled to an instruction limiting her right to defend herself. Appellant does not claim that the trial court failed to instruct the jury on her defenses, but rather claims that the court failed to limit her defense. We have examined every case that Appellant has cited and none holds what she seeks to have the Court here do. Because the trial court was not required to instruct the jury on limitations on the defendant's right to self-

defense, we overrule Appellant's first point of error.

■ In her second point of error, Appellant alleges that the trial court erred in failing to submit an instruction on the right to arm oneself to seek an explanation. Specifically, Appellant states, "if the trial court restricts the defendant's right of self-defense by giving a provoking the difficulty instruction, then the court must include a supplemental instruction called the 'right to arm oneself' instruction."

Traditionally, Texas law has held that if a trial court includes a jury instruction which *restricts* the defendant's right of self-defense, then the defendant is entitled to certain other instructions. The purpose of these other instructions is to assure that the jury has a complete picture of the defendant's and the victim's rights and responsibilities as they respond and counter-respond to the rapidly changing circumstances of the dispute and as culpability for antagonizing the dispute shifts between the two actors.

■ When the trial court charges the jury with an unrestricted self-defense instruction, it is unnecessary for the court to instruct the jury on a defendant's right to carry arms to the scene of the difficulty to seek an amicable adjustment of differences. If the trial court has charged the jury on provoking the difficulty, the court must give a charge on the defendant's right to arm himself and seek a discussion or explanation of the difficulty. *Young v. State*, 530 S.W.2d 120, 122 (Tex.Cr. App.1975). However, "unless the court's charge places some limitation upon the accused's right of self-defense, such as by charge on provoking the difficulty or otherwise, a charge on the right to carry arms is not necessary." *Williams v. State*, 580 S.W.2d 361, 362 (Tex.Cr.App.1979), *quoting Young v. State*, 530 S.W.2d 120, 121–22 (Tex. Cr.App.1975). Because the trial court did not give a provoking the difficulty charge, the court did not err in refusing the right to arm charge. We therefore overrule Appellant's second point of error.

■ In her third point of error, Appellant argues that the trial court erred in failing to instruct the jury on the law of abandoning the difficulty by the Appellant since there was evidence Appellant had abandoned the difficulty.

■ Where the trial court instructs the jury on the defendant's right of self-defense and places no restrictions, such as provocation by the defendant, on such defense, a charge on abandonment of difficulty is unnecessary. *Ervin v. State*, 367 S.W.2d 680, 683 (Tex.Cr.App.1963). In order to be entitled to instruction on abandoning the difficulty, (1) the confrontation must have ceased for a time, and (2) the defendant must have communicated her intent to abandon the difficulty to her adversary. *Id.* Defendant must have communicated her intent to abandon the difficulty in such a way that her adversary understood it. *McElroy v. State*, 455 S.W.2d 223, 226 (Tex.Cr.App.1970).

Appellant contends the confrontation ceased when Appellant left the Wallace house and returned home after sitting for twenty or thirty minutes talking with Mrs. Wallace. Further, Appellant insists the confrontation resumed only when she was approached by Burle with what appeared to her to be a knife. Appellant alleges that she communicated her abandonment by cooling off in Burle's presence. In support of this "cooling off," Appellant cites Mrs. Wallace's testimony that she believed Appellant to have cooled off and that Burle could observe the Appellant's conversation with his mother on the curb.

Because the court did not limit the Appellant's self-defense theory by giving an instruction on provoking the difficulty, Appellant is not entitled to an instruction on abandoning the difficulty. However, even if the court had given an instruction on provoking the difficulty, we do not believe the evidence shows either that the Appellant abandoned the difficulty or communicated her intent to abandon the difficulty to the deceased. The confrontation, in its broadest sense, continued for a period of several hours. The record reflects no testimony indicating Appellant abandoned the difficulty or communicated such abandonment to the victim. Instead, Appellant testified she had no conversation with the deceased before

shooting him. We overrule Appellant's third point of error.

In her fourth point of error, Appellant claims the trial court erred in not instructing the jury to consider verbal threats by the victim, as well as threats by conduct, in assessing whether the defendant acted in self-defense. However Appellant does not refer us to any evidence in the record regarding verbal threats by the victim.

■ When supported by the evidence, a defendant may be entitled to an instruction that threats from a victim may be in the form of actions or words. *Ellis v. State*, 811 S.W.2d 99, 101 (Tex.Cr.App.1991). When there is evidence that the victim verbally threatened the Appellant and that the Appellant may have immediately reacted in self-defense, a charge on self-defense should not be restricted to acts of the victim, but verbal threats as well.

■ In the instant case, there is absolutely no evidence that the victim verbally threatened the defendant even in the context of Appellant's self-defense theory. The Appellant testified nothing was said between her and the deceased at the time of the shooting. The issue as submitted to the jury was ample to cover any conduct or verbal threat under the self-defense theory given by the trial court and rejected by the jury in the present case. We overrule Appellant's fourth point of error.

In her fifth point of error, Appellant claims the court erred in refusing a special requested charge. The charge, as requested by Appellant, sought an instruction on provoking the difficulty, the right to arm oneself, and abandoning the difficulty. We have previously addressed the fact that the Appellant was not entitled to these requests. We overrule Appellant's fifth point of error.

Having found no error, we **affirm** the judgment of the trial court.