Nicholas Ryan LEACH, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–97–00037–CR.

Court of Appeals of Texas,
Tyler.

Nov. 4, 1998.

Mark Wendell Breding, Tyler, for appellant.

Edward J. Martz, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

### OPINION ON MOTION FOR REHEARING

RAMEY, Chief Justice.

Upon filing of Appellant's Motion for Rehearing, the original opinion of the court delivered August 31, 1998 is withdrawn, and the following opinion is substituted:

After a plea of not guilty, Nicolas Ryan Leach ("Appellant") was convicted by a jury of the offense of murder; the jury assessed his punishment at seventy-five (75) years' confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant assigns three points of error. We will affirm.

Because only Appellant's second point pertains to the guilt-innocence phase of trial, we will address it first. Appellant asserts that the trial court erred in failing to grant his timely request for a jury instruction on his "Defense of Property" contention because there was some evidence presented on that issue. He contends that he was entitled to an instruction that his conduct in using deadly force against the victim on this occasion

was justified under section 9.42 of the Texas Penal Code. Section 9.42 allows for the use of deadly force to protect certain property, stating in relevant part as follows:

A person is justified in using deadly force against another to protect land or tangible, movable property:

(1) if he would be justified in using force against the other under Section 9.41; and

(2) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to prevent the other's imminent commission of ... criminal mischief during the nighttime; ... or

(3) he reasonably believes that:

(A) the land or property cannot be protected ... by any other means; or

(B) the use of force other than deadly force to protect ... the land or property would expose the actor or another to a substantial risk or death or serious bodily injury.

TEX.PEN.CODE ANN. § 9.42 (Vernon 1994). The language of section 9.42 requires that all three of its statutory circumstances exist in order for a person to be justified in employing deadly force against another to protect property. *Hernandez v. State*, 914 S.W.2d 218, 223–24 (Tex.App.—El Paso 1996, pet. ref'd). The relevant portion of section 9.41 of the Penal Code provides under subsection (a) that: "[a] person in lawful possession of land ... is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." "Criminal mischief," as referred to in subsection (2) of section 9 .42, is defined in section 28.03 as follows: "[a] person commits an offense if, without the effective consent of the owner: (1) he intentionally or knowingly damages or destroys the tangible property of the owner."

■ Upon proper request, Appellant was entitled to a charge on whether his use of deadly force was justified under section 9.42 only if that issue was raised by the evidence. *Phoenix v. State*, 640 S.W.2d 306, 307 (Tex. Cr.App.1982); *Cole v. State*, 923 S.W.2d 749, 752 (Tex.App.—Tyler 1996, no pet.). This is true regardless of the strength of the evidence or whether it is controverted. *Id.* (citing *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Cr.App.1987)).

■ In the instant case, the evidence revealed that the shooting took place outside an apartment in which the sixteen-year-old Appellant lived at times with his friend, Derrick Holt ("Derrick"). Derrick's mother, Beverly Hitesman ("Hitesman"), lived in an upstairs apartment with her thirteen-year-old daughter, Alona Holt ("Alona"). According to the trial testimony, several members of the East Side Locos gang, including Appellant and Derrick, were milling about the downstairs apartment on the night of October 16, 1995 at approximately 10:30 p.m. Hitesman and several of the others observed the victim, later identified as Gaspar Arellano, Sr. ("Arellano"), enter the apartment property by climbing a fence. Wearing dark clothing and smelling of alcohol, Arellano waved a .380 automatic pistol and claimed to be a police officer. He then pointed the gun at Elies Vargas, one of the young men in the yard, and inquired about the whereabouts of his son. He had come to the apartments looking for his son two days earlier. Arellano then proceeded up the staircase on the outside of the building to the upper apartment where Alona and Appellant had gone when the disturbance began. Arellano kicked open the unlocked door to the upper apartment and threatened Alona. He then exited the upper apartment; as he descended the stairs, he confronted Derrick, who was then carrying a baseball bat, and held him at gunpoint on the stairs. Meanwhile, Appellant had secured and loaded his nine-millimeter automatic handgun while in the upper apartment. Appellant then stepped out onto the top of the stairs and yelled, "[n]obody points a gun at my sister or my family." He then told his friends to get out of the way, and he began firing shots at Arellano. Arellano returned the gunfire. The bullet that killed him struck him in his back at his shoulder blade; another bullet struck him in the back of his right leg, breaking his leg, and a third hit him in the left foot. Appel-

lant was not hit by a bullet fired by Arellano. The evidence furthermore shows that Appellant and others had been "huffing paint" prior to the occurrence; this activity has the effect of rendering the inhaler "high."

In light of this evidence, there is no fact issue regarding any threatened damage to "tangible, movable property." Appellant's reliance on section 9.42 is therefore limited to a claim that his use of deadly force was authorized to protect "land." Of the types of threats set out in subsection (2) of section 9.42, Appellant alleges only that the evidence raises the issue of "criminal mischief." Still, the evidence must raise that issue in the context of subsections (1) and (3), which require that the one asserting the defense show that he reasonably believed that deadly force was immediately necessary to protect the *land* from criminal mischief.

The only evidence of Arellano causing damage to any property may be found in the fact that a bullet from his gun was recovered from a wall. Although there is testimony that he kicked the unlocked upstairs apartment door open, this evidence showed that he caused no damage to the door. Regardless of such facts, we hold that there is no evidence to suggest that Appellant acted out of a belief, even an unreasonable one, that Arellano posed a threat to property. The only proof of Appellant's intent in firing his handgun was that he did so out of animus toward Arellano for pointing a pistol at and threatening Appellant's claimed family members, Alona and Derrick Holt. There was no evidence remotely indicating that Appellant shot Arellano to prevent him from damaging or destroying Appellant's or anyone's land or tangible property.

Of perhaps even greater significance, the undisputed evidence demonstrates that the victim was shot from behind in his shoulder blade and right leg. This indicates that at the time he was shot, Arellano apparently had turned from detaining Derrick and had begun to exit the premises. This is consistent with Arellano having come to find his son, as he had done two days previously, and having left after failing to find him. Again,

under these facts, Appellant's declaration of a desire for revenge against Arellano immediately before firing his pistol at Arellano confirms that the purpose behind his use of deadly force was not a desire to protect property. Appellant's second point of error is overruled.

Appellant's first point of error relates to a claimed omission in the court's charge in the punishment phase. He urges that the trial court erred in failing to charge the jury on the issue of "sudden passion" arising from an adequate cause. He claims that this omission constituted egregious error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr. App.1984) (op. on reh'g). An affirmative finding by the jury on a "sudden passion" issue reduces the penalty from a first to a second-degree felony. TEX.PEN.CODE ANN. § 19.02(d) (Vernon 1994). The punishment range then becomes two years to twenty years rather than five years to life. Acting under the immediate influence of "sudden passion" has become a mitigating circumstance at the punishment stage of a murder trial; voluntary manslaughter is no longer a separate offense. TEX.PEN.CODE ANN. § 19.02(d); *Willis v. State*, 936 S.W.2d 302, 308 n. 1 (Tex.App.—Tyler 1996, pet. ref'd). Inasmuch as the post–1994 amendment definitions of "sudden passion" and "adequate cause" are identical to the prior law, the parties here agree that pre-amendment authorities are pertinent.

Appellant did not request a charge on "sudden passion," and the trial court did not spontaneously instruct the jury on that theory. Moreover, Appellant neither objected to the trial court's failure to include such charge, nor requested a charge to the jury on whether there was an adequate cause to produce that degree of anger, rage, resentment, or terror that would render a person of ordinary temper incapable of cool reflection. TEX.PEN.CODE ANN. § 19.02(a)(2).

Many constitutional guarantees are waived if not asserted by the party to whom they belong. *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Cr.App.1993).[1] Constitutional rights

---

1. Overruled on other grounds in *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Cr.App.1997) and

*Matchett v. State*, 941 S.W.2d 922, 928 (Tex.Cr. App.1996).

fall into three categories. First, there are nonwaivable, nonforfeitable rights such as those affecting due process, jurisdiction of the courts, and separation of powers. *Id.* A second category of litigants' rights includes those that must be implemented by the system unless specifically waived by the defendant on the record. *Id.* The third classification, and by far the most prolific, are those rights that must be implemented by defendant's request and are subject to procedural default if not timely urged by the defendant in the trial forum. *Id.* The issue here is whether the failure to object to the absence of a charge on "sudden passion" is a second or third category error.

Appellant contends that there is a duty imposed upon the trial court to charge the jury sua sponte on "sudden passion" regardless of the Appellant's failure to request the charge or object to its absence. Article 36.14 of the Texas Code of Criminal Procedure provides that the trial judge shall deliver ". . . a written charge distinctly setting forth the law applicable to the case"; article 36.15 specifies that the defendant may ". . . call the trial court's attention to error in the charge, as well as omissions therefrom," by *requested* special charge. TEX.CODE CRIM.PROC.ANN. arts. 36.14 and 36.15 (Vernon Supp.1998). Article 36.16 states that the defendant will be afforded the opportunity to make his objections to the final charge.

 Under the prior decisions, the element of "sudden passion" was not considered a defense to the offense of murder; the establishment of "sudden passion" rendered voluntary manslaughter a lesser included offense. When the evidence raised the issue of "sudden passion," its negation was an implied element of murder that the State must prove beyond a reasonable doubt. *Bradley v. State,* 688 S.W.2d 847, 849–51 (Tex.Cr.App. 1985).[2] Here, however, the issue is waiver, not burden of proof. A criminal defendant may waive any error including constitutional error, other than the right to trial by jury, by failure to object or request proper relief. *Miller v.* State, 939 S.W.2d 681, 687 (Tex.

App.—El Paso 1996, no pet.); see *Little v. State,* 758 S.W.2d 551, 564 (Tex.Cr.App.1988); *Perry v. State,* 703 S.W.2d 668, 673 (Tex.Cr. App.1986). Specifically, where the evidence fairly raises the issue, *and the charge is properly requested,* the trial court is required to submit the issue to the jury. *Medlock v. State,* 591 S.W.2d 485, 486 (Tex.Cr.App.1979); *Roberts v. State,* 590 S.W.2d 498, 500 (Tex. Cr.App.1979); *Ray v. State,* 515 S.W.2d 664, 666 (Tex.Cr.App.1974). Under this authority, we conclude that the right to a submission of the issue of "sudden passion" to the jury in the punishment phase was forfeitable and therefore waived by the failure to request the charge or object to its omission. *Marin,* 851 S.W.2d at 279.

 Furthermore, even if we were to conclude that the trial court had a duty to charge the jury on "sudden passion," we hold that Appellant has not discharged his burden of establishing the requisite "egregious harm" in failing to give the charge. Appellant has suffered egregious harm if he has been deprived of a fair and impartial trial. *Almanza,* 686 S.W.2d at 171; *Lane v. State,* 957 S.W.2d 584, 587 (Tex.App.—Dallas 1997, pet. ref'd). In the guilt-innocence phase, a number of witnesses testified to various aspects of the events preceding the shooting episode, including the victim, Arellano's, threats and his brandishing of a pistol. Appellant claims that Arellano's actions provoked him to the degree that the victim's conduct raised the issue of "sudden passion." In the guilt-innocence phase of the case, at Appellant's instance the court submitted a self-defense charge raised by those eye-witness accounts of the occurrence. The jury found Appellant guilty of murder, thereby denying his self-defense contention.

In the punishment phase, the principal issue pertained to the appropriateness of "probation" for the Appellant. The witnesses' testimony, the charge, and the arguments were devoted almost exclusively to that issue. Appellant's counsel contended that the facts describing the occurrence supported his position and constituted a strong case that Ap-

---

**2.** Overruled on other grounds in *Moore v. State,* 969 S.W.2d 4, 9–10 (Tex.Cr.App.1998) (holding that voluntary manslaughter is a lesser included

offense of murder even when the issue of sudden passion is not raised by the evidence).

pellant's term of punishment should be limited to ten years and that the jury should recommend probation. TEX.CODE CRIM.PROC. ANN. art. 42.12 § 4 (Vernon Supp.1998). The jury, however, assessed punishment at seventy-five years' confinement, which emphatically foreclosed Appellant's plea for probation.

As stated, the considerable evidence pertaining to the victim's pre-shooting conduct immediately preceding the shooting was offered in the guilt-innocence phase of the trial. On both Appellant's self-defense and probation respective contentions in the two phases of the trial, the court instructed the jurors that they might consider the aforesaid facts as they might have provoked the Appellant to shoot the victim. In fact, in the court's charge and in the arguments of counsel, the jury was advised that it may consider these facts in rendering its verdict on punishment. Nevertheless, the jury after instructions by the court and arguments of counsel, unmistakably denied Appellant's construction of the critical evidence. There is clear disparity between the jury's finding as to the seriousness of and the appropriate punishment for Appellant's crime and the statutory periods of confinement for a second degree felony. We cannot agree that Appellant was deprived of a fair and impartial trial or suffered egregious harm by the trial court's failure to charge the jury on "sudden passion" predicated upon the above-stated evidence. For these reasons, Appellant's first point of error is overruled.

In his third point of error, Appellant asserts that he was deprived of effective assistance of counsel, as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution. He alleges that this deprivation occurred in two ways, one affecting the entire trial and the other affecting the punishment phase only. In reviewing a claim of ineffective assistance of counsel affecting the guilt innocence phase of trial, the Texas courts apply the familiar two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that test, the appellant must show first that his counsel's performance fell below an objective standard of reasonableness, identifying acts or omissions showing that counsel's performance was deficient, and second, that there is a reasonable probability that the outcome of the proceedings would have been different, but for the unprofessional errors of his counsel.

■ A different standard applies when the alleged ineffective assistance occurs during the punishment phase of a non-capital trial. The standard for determining whether the accused was afforded effective assistance of counsel during the punishment stage is the *Ex parte Duffy*, 607 S.W.2d 507, 514–15 (Tex. Cr.App.1980) test: (1) whether counsel was reasonably likely to render effective assistance, and (2) whether counsel reasonably rendered effective assistance. *Craig v. State*, 825 S.W.2d 128, 129–30 (Tex.Cr.App.1992). The difference between the two standards is limited to the second prong because the *Duffy* standard does not require a showing of harm sufficient to undermine confidence in the punishment verdict. *Valencia v. State*, 946 S.W.2d 81, 83 (Tex.Cr.App.1997).

■ With regard to the guilt-innocence stage, Appellant asserts that his counsel rendered ineffective assistance by his failure to object to irrelevant, prejudicial "gang activity" throughout the trial despite the trial court's pre-trial entry of an in limine order requiring the State to secure the court's approval before offering the evidence.[3] The relevant portion of the court's in limine order was limited to evidence "[t]hat Defendant is alleged to be a member of a 'gang.' " The in limine order did not extend to the pervasive testimony by numerous witnesses that the offense occurred at a gathering place for the East Side Locos gang, that the gang members had been engaged in various activities associated with gangs, such as "huffing paint," nor that the victim's purpose in coming to the premises on the evening of the shooting was to wrest his son from the gang hangout. The eyewitness testimony of the event came basically from six gang mem-

---

**3.** Appellant was represented by different counsel during the pre-trial proceedings in which the in limine order was granted.

bers.[4] It was not possible to exclude evidence of the presence of the gang members nor the activity in which they were engaged on the evening of the offense. Article 38.36 of the Code of Criminal Procedure specifically authorizes the State, as well as the defendant, "to offer testimony as to all relevant facts and circumstances surrounding the killing. . . ." Tex.Code Crim.Proc.Ann. art. 38.36 (Vernon Supp .1998). The evidence concerning the gang and that Appellant was a gang member was not inadmissible, and counsel's objection to that testimony would have been meritless. Appellant's counsel was not deficient in failing to urge the order in limine or to object to the testimony of relevant gang activity. *Riles v. State*, 595 S.W.2d 858, 861 (Tex.Cr.App.1980).

■ Second, Appellant complains that his counsel failed to object to the admissibility of photographs taken immediately after the jury returned the guilty verdict, in which Appellant appeared to be making "gang signs." Although the gang signs were actually performed in the presence of the jury, he complains that his counsel was ineffective because he failed to object when photographs of Appellant's gang signs were later offered during the punishment hearing. In the summation, the State argued that the photographs evidenced Appellant's lack of remorse for the shooting and justified a stiff sentence. In *Good v. State*, 723 S.W.2d 734, 737 (Tex.Cr.App.1986), the State made this same type of argument at the guilt-innocence phase of trial. On appeal, the court held the State's argument concerning defendant's nontestimonial courtroom demeanor constituted evidence of guilt and violated the fundamental requirement that the defendant be convicted only on relevant evidence. *Id.* Here, however, the jury already had determined Appellant's guilt before the photographs were taken. Moreover, the hand signs were not neutral, passive demeanor,

and there was a plethora of other evidence that Appellant was associated with a gang.

■ The right to effective counsel is not the right to error-free counsel. *Hernandez v. State*, 726 S.W.2d 53, 58 (Tex.Cr.App. 1986). An isolated failure to object to improper evidence does not necessarily constitute ineffective assistance of counsel. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Cr.App. 1986). The appellate court must look to the totality of the representation. *Id.* Here, Appellant's counsel, after being appointed, perfected Appellant's application for probation, extensively voir dired the jury panel, cross-examined State's numerous witnesses, urged objections throughout the trial, presented Appellant's three witnesses, and argued fully on both phases of the trial. Appellant has asserted no instances of defective representation in the overall presentation of the Appellant's defense during the trial. Therefore, we disagree that the failure to object specifically to the admissibility of the photographs of the Appellant when offered in the punishment phase of the trial constituted ineffective assistance of counsel requiring reversal.[5] Appellant's third point of error is overruled.

The judgment of the trial court is **affirmed.**

---

4. There was also testimony from Beverly Hitesman, the owner of the premises, and her daughter, Alona.

5. Although not mentioned in Appellant's third point, nor fully briefed, Appellant makes passing reference to an additional ground of ineffective assistance of counsel, that counsel deficiently failed to request a charge on "sudden passion." While "sudden passion" was discussed extensively under point two, we nevertheless hold that under the facts of this case, the failure to request such a charge at punishment did not constitute ineffective assistance of counsel under *Ex parte Duffy*, 607 S.W.2d at 514–15 and the reasoning developed in the second part of our consideration of Appellant's first point.