COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CODY TROY DACUS, | § | |
| Appellant, | § | No. 08-08-00026-CR |
| | § | Appeal from the |
| v. | § | Criminal District Court No. 7 |
| THE STATE OF TEXAS, | § | of Dallas County, Texas |
| Appellee. | § | (TC# F-0645047-Y) |
| | § | |

**O P I N I O N**

After Appellant, Cody Dacus, pled guilty to murder, a jury sentenced him to ninety-nine years' confinement. Appellant brings five issues on appeal, challenging the jury charge, the dismissal of a juror, and the admission of evidence. Finding no error, we affirm.

**BACKGROUND**

The facts are well known to the parties, and we do not recite them here in detail. Suffice it to say, the evidence presented showed that when Appellant was sixteen, he met the deceased. In exchange for sexual favors, the deceased provided Appellant with drugs and money. Years later, the deceased was reported missing, and officers, during their investigation, found extensive blood and tissue at the deceased's residence. After further investigation, a warrant was issued for Appellant's arrest, and after talking to the police, Appellant confessed.

According to Appellant's confession, he was asleep on the couch when the deceased woke him by placing a crack pipe in his mouth. As they smoked crack, a man knocked on the door. After the deceased told the man to leave, he and Appellant got into an argument. When the deceased pulled a knife, Appellant took it from him. Appellant then choked the deceased with his hand and

slit the deceased's throat with the knife. When the deceased tried to get up, Appellant placed a pillow over his face and smothered him until he died. The next day, Appellant dismembered the body and placed the remains on his grandfather's property in Hill County, Texas.

## DISCUSSION

On appeal, Appellant asserts five issues. The first contends that the trial court failed to submit a sudden-passion instruction in the court's charge, the second alleges that the trial court erred by dismissing a juror without an adequate showing of disability, the third and fourth issues challenge the trial court's neutrality and the admission of a letter, and the fifth issue asserts that the trial court abused its discretion by admitting prejudicial testimony.

### *Sudden Passion*

We first address Appellant's sudden-passion complaint. According to Appellant, the trial court erred by submitting a jury charge that omitted a sudden-passion instruction. Appellant admits that he did not object to the charge as submitted or request the complained-of instruction. Therefore, we may not reverse on the trial court's failure to *sua sponte* instruct the jury on sudden passion unless we find egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985), *overruled on other grounds, Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).

However, before we proceed to a harm analysis, we must first determine whether error exists in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If we find error, we then apply either the "some harm" or "egregious harm" analysis depending on whether the error was preserved in the trial court. *See id.*; *Almanza*, 686 S.W.2d at 171.

A defendant may raise the issue of sudden passion, a defensive issue, at the punishment stage of a trial. *See* Tex. Penal Code Ann. § 19.02(d) (Vernon 2003). The burden is on the defense to prove sudden passion in the affirmative by a preponderance of the evidence. *Id*. However, a trial

court has no duty to *sua sponte* instruct the jury on unrequested sudden-passion issues. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (holding that trial courts have no duty to *sua sponte* instruct the jury on unrequested defensive issues).

Here, Appellant did not object to the charge or request an instruction on sudden passion; therefore, the trial court's failure to instruct the jury on the same was not error. *See Rios v. State*, 990 S.W.2d 382, 385 (Tex. App. – Amarillo 1999, no pet.); *Leach v. State*, 983 S.W.2d 45, 49 (Tex. App. – Tyler 1998, no pet.); *Swaim v. State*, No. 2-07-165-CR, — S.W.3d —, 2009 WL 4878976, at *1 (Tex. App. – Fort Worth Dec. 17, 2009, no pet.) (op. on pet. for discretionary review) (not yet reported); *Eisert v. State*, No. 05-05-01604-CR, 2006 WL 3259339, at *2 (Tex. App. – Dallas Nov. 13, 2006, no pet.) (mem. op., not designated for publication); *Harris v. State*, No. 14-00-01312-CR, 2001 WL 1635890, at *1 (Tex. App. – Houston [14th Dist.] Dec. 20, 2001, no pet.) (op., not designated for publication) (cases holding same). Finding no error in the charge, we need not proceed to a harm analysis. Accordingly, Appellant's first issue is overruled.

*Juror Disability*

Appellant's second issue contends that the trial court abused its discretion when it discharged Juror Paramo without an adequate showing of disability. We disagree.

A trial court may discharge a juror from duty who suffers from a serious disability. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29 (Vernon Supp. 2009); *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990). A disability is generally described as some physical illness, mental condition, or emotional state that prevents a juror from fully and fairly performing her duties as a juror. *Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002); *Carrillo v. State*, 597 S.W.2d 769, 770-71 (Tex. Crim. App. 1980). The decision to excuse a juror, once the jury has been impaneled and sworn, is reviewed under an abuse-of-discretion standard. *Routier v. State*, 112 S.W.3d 554,

588 (Tex. Crim. App. 2003), *cert. denied,* 541 U.S. 1040, 124 S.Ct. 2157, 158 L.Ed.2d 728 (2004); *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999).

Here, after the jury was sworn but prior to Appellant's plea to the indictment, opening statements, and the presentation of evidence, Juror Paramo indicated that she could not proceed with the case. When the trial court asked Paramo to explain, she stated that the pressure and nervousness of being at the courthouse with police makes her very nervous and uncomfortable, and causes her to lose her emotions. Paramo elaborated that she cannot control her nervousness and that she would focus on her own emotions rather than the case at hand. Because of her emotions, Paramo did not believe she could be fair or impartial to both sides. The trial court noted that the parties had the opportunity to observe Paramo and that it was pretty clear that she could not continue with the case or be fair to both sides. The trial court then excused Paramo from service.

From this record, we cannot conclude that the trial court abused its discretion in dismissing Paramo as a disabled juror. It is clear that Paramo was so nervous and distraught about being in the courthouse and near the police that she lost control of her emotions and could only focus on maintaining her own emotions and nervousness rather than listening to the testimony and evidence presented at trial, and acting as a fair and impartial juror. The trial court was in the best position to view Paromo's demeanor and disability, and we find no abuse of discretion in its decision to discharge Juror Paramo. *See Hill*, 90 S.W.3d at 310 (noting that a juror was disabled for suffering from "debilitating panic attacks"); *Stephens v. State*, 276 S.W.3d 148, 152 (Tex. App. – Amarillo 2008, pet. ref'd) (trial court did not abuse its discretion in discharging juror who was emotionally distraught after hearing testimony in the case); *Castro v. State*, 233 S.W.3d 46, 48 (Tex. App. – Houston [1st Dist.] 2007, no pet.) (trial court did not abuse its discretion in discharging juror who

was nervous and uneasy, and felt physically sick at the thought of passing judgment on another); *Castle v. State*, Nos. 05-06-01060-CR, 05-06-01061-CR, 2008 WL 2840683, at \*3 (Tex. App. – Dallas July 24, 2008, no pet.) (op., not designated for publication) (deferring to trial court's discretion to discharge juror who was emotionally upset, felt "pretty bad," and had "tears in her eyes").

Nevertheless, Appellant cites *Hill* to support his proposition that there must be independent corroboration from a doctor showing Paramo suffered from a medical malady to establish disability under article 36.29. However, the Court of Criminal Appeals in *Hill* was not concerned with the sufficiency of the evidence supporting the juror's disability, rather, the Court simply noted the evidence that was presented to the trial court to show her disability, which included a doctor's note. *Hill*, 90 S.W.3d at 310. The real issue in *Hill* was the invocation of double jeopardy after the juror was discharged and a mistrial declared. *Id*. at 311. We are unaware of any requirement that a trial court must first obtain medical corroboration before discharging a juror for a disability. Appellant's second issue is overruled.

*Appellant's Letter*

Appellant's next two issues allege that the trial court abused its discretion by admitting a letter he wrote in jail, and that in so doing, the trial court abandoned his role of neutrality. The record reflects that while Detective Don Phillips was investigating the case, he learned from Dan Graph, a friend of Appellant, about a letter Appellant wrote while in jail.[1] Graph then voluntarily gave the letter to the detective, and when the State sought its admission at trial, the prosecutor asked Detective Phillips whether that was the letter Graph provided to him, whether it was signed by

---

[1] In the letter, Appellant admitted to the crime but expressed remorse for doing so.

Appellant, and whether the signature on the letter matched other documents signed by Appellant.[2]

After the detective replied affirmatively, Appellant objected to the letter's admission: "Your Honor, we will object at this time. If they want to bring in Dan and testify about this letter, that will be fine." The trial court, outside the presence of the jury, overruled the objection, noting that it had examined the signature on the letter and various other documents, and that the signature was unquestionably the same in regards to the "C," "D," and "Y." When Appellant asked whether the judge was a handwriting expert, the trial court replied that any layman could make the determination. Appellant raised no other objections to the admission of the letter, and the letter was admitted and read before the jury.

On appeal, Appellant contends that the letter was not properly authenticated under Rule 901(a), as there was no evidence that Detective Phillips recognized or could identify his handwriting. *See* TEX. R. EVID. 901(a) ("requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"). Initially, we question whether Appellant's complaint on appeal, the authenticity of Appellant's handwriting, comports with his objection at trial, that Graph, not Detective Phillips, should authenticate the letter. *See* TEX. R. APP. P. 33.1 (to preserve a complaint for appellate review, the complaint must be presented to and ruled upon by the trial court); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited). However, assuming error was preserved, we do not believe the trial court abused its discretion by admitting the letter. *See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006) (trial court's

---

[2] As Detective Phillips also took Appellant's statement and witnessed Appellant sign the same, he was familiar with Appellant's handwriting and signature.

ruling on the admission of evidence is reviewed under an abuse-of-discretion standard).

The authentication of handwriting may be established by a comparison performed by the jury. *See* Tex. Code Crim. Proc. Ann. art. 38.27 (Vernon 2005); *Zimmerman v. State*, 860 S.W.2d 89, 97 (Tex. Crim. App. 1993), *vacated & remanded on other grounds, Zimmerman v. Texas*, 510 U.S. 938, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993). Here, the authenticity of the letter could have been established by the jury's comparison of the signature on the letter with other unobjected-to exhibits containing Appellant's signatures, i.e., his judicial confession and voluntary statement, as Detective Phillips so testified. *See Ex parte Watson*, 606 S.W.2d 902, 905 (Tex. Crim. App. 1980) (trial court did not err in admitting letter written by defendant when the jury had the opportunity to determine the authenticity of the letter by comparing it with defendant's other writings that were already in evidence); *Logan v. State*, 48 S.W.3d 296, 301 (Tex. App. – Texarkana 2001) (trial court did not err in admitting inventory forms defendant had purportedly signed and submitted for insurance claims on lost or damaged personal property because "the authenticity of the forms could have been established by the jury's comparison of the signatures on the inventory forms with other exhibits containing [defendant's] signature which were also admitted into evidence without challenge to their authenticity"), *aff'd*, 89 S.W.3d 619 (Tex. Crim. App. 2002). Accordingly, the trial court did not abuse its discretion by admitting the letter.

Appellant also complains that the trial court exhibited bias when he purportedly authenticated the letter. A trial court must maintain an attitude of impartiality throughout the trial. *Salazar v. State*, 298 S.W.3d 273, 280 (Tex. App. – Fort Worth 2009, pet. ref'd); *Hoang v. State*, 997 S.W.2d 678, 680 (Tex. App. – Texarkana 1999, no pet.). However, a trial court may properly manage the proceedings before it, including such matters as the mode and order of interrogating witnesses and the presentation of evidence. *See Howard v. State*, 766 S.W.2d 907, 908 (Tex. App. – Fort Worth

1989, no pet.); *Silva v. State*, 635 S.W.2d 775, 778 (Tex. App. – Corpus Christi 1982, pet. ref'd); *see also* TEX. R. EVID. 611(a).

As noted before, prior to Appellant's objection, the prosecutor authenticated the letter through Detective Phillips' testimony by questioning whether that was the letter Graph provided to him, whether it was signed by Appellant, and whether the signature on the letter matched other documents signed by Appellant. When Appellant objected and the trial court examined the signature on the letter with various other documents, we believe the trial court was merely concerned with properly applying the rules of evidence in regard to the admission of the letter under article 38.27. *See* TEX. CODE CRIM. PROC. ANN. art. 38.27 ("[i]t is competent to give evidence of handwriting by comparison, made by experts or by the jury."). Moreover, even if the trial court's comment can be interpreted to show some type of bias, because the comment was made outside the presence of the jury, there is no harmful error. *See DeBolt v. State*, 604 S.W.2d 164, 166 (Tex. Crim. App. 1980) (finding trial court did not abandon its role of neutrality when it instructed the prosecutor as to the proof required to lay a predicate for the introduction of an autopsy report, and even if it did, because the instructions were given outside the presence of the jury, no impressions of a team or of partiality could have been conveyed to the jury, thus any error was harmless); *Stewart v. State*, No. 05-07-00289-CR, 2008 WL 1747482, at *5 (Tex. App. – Dallas Apr. 17, 2008, pet. ref'd) (op., not designated for publication) (finding trial court's initiation of discussions on the admissibility of statements outside the presence of the jury showed court's concern with the rules of evidence, not that he abandoned his role as an impartial magistrate). Therefore, Issues Three and Four are overruled.

*Prejudicial Testimony*

Appellant's fifth and final issue alleges that the trial court abused its discretion by admitting

prejudicial testimony in violation of Rule 403 of the Texas Rules of Evidence. Specifically, the complaint centers on Officer Limmer's testimony that when he asked Appellant how he was doing, Appellant "said something to the effect that he had murdered a guy. He wasn't sure how he felt, but as long as he gets ten years, he will be all right." Appellant objected that the testimony was more prejudicial than probative, and the State replied that the testimony was a statement against interest and that it addressed Appellant's state of mind, motive, and reasoning. The trial court admitted the statement as it showed lack of remorse and was relevant to the issue of future dangerousness.

The trial court has wide latitude in ruling on the prejudicial nature of evidence. *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on reh'g). We therefore review a trial court's decision to admit evidence under an abuse-of-discretion standard, and we will not disturb that ruling unless it falls outside the zone of reasonable disagreement. *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999); *Arzaga v. State*, 86 S.W.3d 767, 773-74 (Tex. App. – El Paso 2002, no pet.).

While doing so, we are cognizant that during the punishment phase there are no discrete factual issues; rather, deciding what punishment to assess is a normative process. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). In making that determination, the jury was entitled to consider "any matter the court deem[ed] relevant to sentencing." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2009) (noting that, during punishment, State and defendant may introduce any evidence court deems relevant to sentencing). One such matter is the accused's "personal responsibility" and "moral culpability" for the crime charged. *See Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991) (per curiam) (holding evidence admissible in punishment phase of trial because evidence had bearing on appellant's personal responsibility and moral guilt).

Nevertheless, such evidence may still be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, i.e., an emotional one. *Montgomery*, 810 S.W.2d at 389. The danger of confusing the issues or misleading the jury arises when the admission of certain evidence tends to sidetrack the jury into disputes that are only tangentially related to the issues in the case. *Wiley v. State*, 74 S.W.3d 399, 407 n.21 (Tex. Crim. App.), *cert. denied*, 537 U.S. 949, 123 S.Ct. 415, 154 L.Ed.2d 294 (2002). Therefore, we consider several factors in determining whether the proffered evidence is more probative than prejudicial, including: (1) how compellingly the evidence serves to make more or less probable a fact of consequence; (2) the potential the evidence has to impress the jury in some irrational but indelible way; (3) how much trial time the proponent needs to develop the evidence; and (4) how great the proponent's need for the evidence. *Mozon*, 991 S.W.2d at 847.

Bearing in mind that the issue before the jury was Appellant's punishment, where the focus is on the personal responsibility and moral blameworthiness of the defendant, we hold that the trial court did not abuse its discretion in admitting the testimony. The evidence did not take an inordinate amount of time to present, and there is little danger that the evidence confused the issues or misled the jury. Appellant's statement was probative of his personal responsibility as well as his moral culpability for the charged crime. It suggested a lack of empathy for the victim and remorse or repentance for his conduct. The statement aided the jury in understanding the punishment issues and assessing a sentence based on Appellant's future dangerousness. Although the statement may be prejudicial, it was not unfairly so. "'Unfair prejudice' does not, of course, mean that the evidence injures the opponent's case,'" *see Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)

(citation omitted); rather, "'unfair prejudice' means the undue tendency of the evidence to suggest a decision on an improper basis." *Flores v. State*, 125 S.W.3d 744, 746 (Tex. App. – Houston [1st Dist.] 2003, no pet.). The evidence in this case only suggested that Appellant be punished for his moral blameworthiness and his character, which were proper bases for the jury to consider. *See Rodriguez v. State*, 203 S.W.3d 837, 843-44 (Tex. Crim. App. 2006) (during punishment phase of trial, trial court did not abuse its discretion in overruling a Rule 403 objection where evidence was probative of the appellant's moral blameworthiness); *Kos v. State*, 15 S.W.3d 633, 641-42 (Tex. App. – Dallas 2000, pet. ref'd) (during punishment phase of trial, admission of evidence on preferential or situational offenders, in an aggravated-sexual-assault-of-a-child case, could properly have been considered by the jury in determining appellant's moral culpability and personal responsibility for the crimes charged and, ultimately, the appropriate punishment to assess); *Sapien v. State*, No. 08-98-00015-CR, 2000 WL 678851, at *13 (Tex. App. – El Paso May 25, 2000, pet. ref'd) (op., not designated for publication) (during punishment phase of trial, admission of handgun gesture was more probative than prejudicial as it showed a lack of empathy for his victim and remorse for violating the law). Appellant's fifth issue is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

February 17, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)