**Affirmed and Memorandum Opinion filed September 15, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00987-CR

**DEAIRA PITTS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1577116**

## MEMORANDUM  OPINION

A jury found appellant Deaira Pitts guilty of the murder of the complainant, Michael Simmons.  Appellant now appeals her conviction asserting that it should be reversed because (1) the evidence was insufficient to support her conviction, (2) the trial court reversibly erred when it denied her request to include a defense of property instruction in the jury charge, (3) the trial court reversibly erred when it denied her request to submit the lesser-included offense of manslaughter in the jury charge, and (4) she was egregiously harmed by the trial court's failure to instruct

the jury that the State carried the burden of disproving self-defense.  We affirm.

**BACKGROUND**

It is undisputed appellant stabbed Simmons in the back and Simmons died within minutes of being stabbed.  Appellant agreed to be interviewed by police detective Shawn Overstreet and revealed the following sequence of events.  Appellant met Simmons while he was working construction in Baltimore, Maryland.  Simmons and appellant became romantically involved and appellant accompanied Simmons back to Houston when he finished his work in Baltimore.  According to appellant, they were dating, but were not in a committed relationship.  Once in Houston, they moved into Simmons' mother's apartment, but she eventually made them move out because they were constantly arguing.  Simmons and appellant then moved into a hotel room while they searched for an apartment.  They found an apartment and paid the amount required to move in on Friday evening, January 12, 2018.  Appellant and Simmons each paid half of the money required to move into the apartment.

Appellant and Simmons started arguing the next day, their first full day in the apartment.  The dispute continued Sunday when Simmons started playing loud music while appellant tried to study.  Appellant left the apartment at this point.  When she returned, Simmons "started picking at" her.  Appellant told Simmons to leave the apartment and go get some fresh air.  Simmons left the apartment and he met a stripper while he was out.  Simmons called appellant and asked if he could bring the stripper back to the apartment.  Appellant refused permission for Simmons to bring the stripper to the apartment, so Simmons returned alone.

The two began arguing again.  Appellant tried to call the police because Simmons was refusing to leave the apartment.  Simmons tried to grab appellant's phone and she fell to the floor.  Appellant then started having an asthma attack and

2

she called 9-1-1 for an ambulance and the police. Appellant packed his things and left the apartment before the ambulance and police arrived. Appellant did not give the police Simmons' correct name because he was on parole and she did not want him to go to jail.

The police and ambulance left the apartment and Simmons returned a few minutes later, entering the second-floor apartment through the balcony sliding-glass door. When appellant asked why he had returned, Simmons responded that he was there to get the rest of his stuff. Simmons then tried to steal appellant's wallet. Appellant again called the police.[1] Simmons left the apartment again. Once Simmons had left, appellant locked both the balcony's sliding-glass door and the front door of the apartment.

At that point, appellant called a friend, Ronnie Mitchell, and asked him to come to the apartment.[2] According to appellant, she was concerned about what Simmons would do if he returned to the apartment and she wanted someone in the apartment for protection. Appellant described Mitchell as a friend, but told Detective Overstreet that Simmons believed she was having a relationship with Mitchell. Appellant also told Detective Overstreet that Simmons was possessive of her. Mitchell arrived at the apartment complex that evening. Mitchell initially stopped and talked to Simmons, who was sitting in his car in the complex parking lot. According to appellant, Mitchell told her that Simmons was "good." The two then entered the apartment, where appellant resumed studying. Throughout that Sunday, Simmons called and texted appellant. Simmons continually asked appellant for forgiveness and asked if he could return to the apartment.

That night, appellant heard Simmons try, and fail, to enter the apartment

---

[1] According to appellant, this call was cut short when the police hung up on her.

[2] Appellant knew Mitchell as Troy Gasman.

3

through the balcony sliding-glass door. According to appellant, Simmons hopped down off the balcony, walked up the steps to the second floor, and approached the apartment's front door. This door had two locks, one that could be opened from the outside with a key, the second a deadbolt, which could only be opened from the inside. Simmons used his key to open the door's lock. Still unable to enter the apartment because the deadbolt remained locked, Simmons kicked the door.[3] Appellant told Detective Overstreet that she then unlocked the deadbolt and opened the door so she could see what was going on outside. Simmons then kicked the door open and moved into the apartment, pushing appellant aside. Mitchell then came toward Simmons and the two men started struggling. According to appellant, the two men did not exchange blows, but it appeared Simmons was trying to push Mitchell out of the apartment. Appellant yelled at Simmons to stop.

Appellant told Detective Overstreet that she had never seen Simmons look the way he did that night and that she was scared of what would happen if Simmons won the struggle, pushed Mitchell out of the apartment, and then locked the door. When it appeared that Simmons was winning the struggle, appellant went to the kitchen, grabbed a knife, and stabbed Simmons three times in the back. Appellant told Detective Overstreet that Simmons walked out to the apartment landing, started vomiting, and collapsed. Mitchell, who had not been pushed completely out of the apartment, asked appellant what she had done. Appellant subsequently threw the knife in some bushes outside the apartment.

Nearby apartment residents testified that they heard arguing coming from appellant's apartment throughout the day. Apartment resident Kegan Houston

---

[3] The crime scene investigator testified during appellant's trial that while there was a crack in the apartment door, the door and frame appeared intact. He offered no opinion on how long the crack had been in the door.

4

testified that he had seen Simmons walk by on the sidewalk around 11:00 p.m. and that Simmons appeared frustrated and angry. Other witnesses testified that they had seen Simmons sitting quietly outside the apartment that evening. About five minutes after he saw Simmons, Houston was in his bedroom when he heard a loud rumbling noise. Houston opened his first-floor apartment's front door and he saw Simmons laying on the stairs, spitting blood. Houston closed the door and told his friend, Jeremy Washington, what he had seen. Houston then called 9-1-1. Washington, who had talked to Simmons earlier in the evening, ran up the stairs where he found Simmons unresponsive and covered in blood.[4] Washington knocked on appellant's apartment door. Mitchell came out on the landing and Washington asked what had happened. Washington then asked both Mitchell and appellant about four or five times if they had called the police. Neither responded. Eventually, Mitchell said he had nothing to do with it. Appellant said only that they "got into it." Mitchell did finally call 9-1-1, reporting that a black male had tried to break into the apartment and had been stabbed by the owner.

The paramedics arrived and found Simmons lying in a pool of blood at the top of the stairs. Simmons did not have a pulse and the paramedics determined that he was deceased. An autopsy concluded that Simmons had suffered three stab wounds, only one of which was fatal. The fatal wound was in the right side of his back, which penetrated his chest cavity and right lung, causing massive bleeding. According to the assistant medical examiner, Simmons died within minutes of being stabbed.

Appellant went to trial before a jury. At the conclusion of the evidence the

---

[4] Washington testified during appellant's trial that he had known Simmons in middle school, where they had played football together. Washington testified that he was surprised when he had run into Simmons at the apartment complex that day. Washington had invited Simmons to come into Houston's apartment, but Simmons had refused, saying he would wait until appellant opened the door and let him into the apartment.

trial court's proposed charge included a self-defense instruction. Appellant objected to the proposed charge and requested that the trial court include two additional instructions: (1) a defense of property instruction pursuant to Penal Code section 9.42; and (2) an instruction on the lesser-included offense of manslaughter. The trial court rejected both. The jury subsequently found appellant guilty as charged in the indictment and sentenced her to serve twenty years in prison. This appeal followed.

## ANALYSIS

## I. The evidence is legally sufficient to support appellant's conviction.

Appellant argues in her fourth issue on appeal that the evidence is insufficient to support her conviction because, in her view, no rational jury would have rejected her self-defense argument. We address this issue first because if successful, it would entitle appellant to the greatest relief. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

### A. Standard of review and applicable law

In reviewing the sufficiency of the evidence to support a conviction, we must consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1973); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). In our review, we consider all of the evidence in the record, whether admissible or inadmissible. *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013)). We measure the sufficiency of the evidence supporting a conviction by comparing the evidence presented during the trial to the elements of the offense

as defined in a hypothetically-correct jury charge. *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017).

In viewing the evidence in the light most favorable to the verdict, we must "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (citing *Jackson*, 433 U.S. at 319). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence but only ensure that the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Direct and circumstantial evidence are treated equally. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury may reasonably infer facts from the evidence as it sees fit. *Price*, 502 S.W.3d at 281. When the record supports conflicting inferences, we presume the trier of fact resolved the conflicts in favor of the verdict and defer to that determination. *Clayton*, 235 S.W.3d at 778.

Appellant was charged with murder under section 19.02(b) of the Texas Penal Code, which provides that "[a] person commits an offense if he: (1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b). A person acts intentionally with respect to a result of her conduct when it is her conscious objective or desire to cause the result. Tex. Penal Code § 6.03(a); *Herrera v. State*, 367 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A person acts knowingly with respect to a result of her conduct when she is aware her conduct is reasonably likely to cause the result. Tex. Penal Code § 6.03(b); *Herrera*, 367 S.W.3d at 770.

7

A person generally is justified in using deadly force against another in self-defense if, among other things, that person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code §§ 9.31, 9.32. A "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor." *See id.* § 1.07(a)(42). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *See id.* § 9.01(3). "Serious bodily injury" is an injury that creates a "substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See id.* § 1.07(a)(46).

When a defendant raises a justification defense such as self-defense, the jury's verdict of guilt is an implicit finding that it rejected the defense. *See* Tex. Penal Code §§ 9.02, .22, .31–.32; *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). Because the State bears the burden of persuasion to disprove a section 2.03 defense such as justification by establishing its case beyond a reasonable doubt, we review a legal-sufficiency challenge to the jury's rejection of such a defense under the *Jackson* standard. *See* Tex. Penal Code §§ 2.03(a), 9.02; *Jackson*, 443 U.S. at 319; *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.— Houston [1st Dist.] 2011, pet. ref'd) (citing *Brooks*, 323 S.W.3d at 895 ). We do not look at whether the State refuted the defensive theory, but whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and could have found against the defensive theory beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913.

### B. Legally sufficient evidence supports the jury's rejection of appellant's self-defense argument.

We conclude that any rational trier of fact could have reasonably concluded beyond a reasonable doubt that appellant's use of deadly force against Simmons was not justified by self-defense. We begin by pointing out that appellant misstates the law when she attempts to impose a burden to produce evidence contradicting her assertion that her actions were justified by self-defense. As stated above, the State does not have a burden to produce evidence refuting an assertion of self-defense. *See Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt."). Instead, a reviewing court determines whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and could have found against the defensive theory beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913.

Turning to the evidence, it was undisputed appellant was the person who fatally stabbed Simmons in the back. In addition, it was undisputed appellant was angry with Simmons that day and the two had been arguing since they had moved into the apartment. The jury heard appellant tell Detective Overstreet during her statement that when the police were at the apartment, she did not tell them Simmons' real name because she did not want him to go to jail. The jury also heard appellant tell Detective Overstreet that each time she called the police, or attempted to call the police, Simmons promptly left the apartment. Yet, appellant chose not to call police during the final incident that led to Simmons' murder. It was also undisputed that Simmons was not armed that night. Indeed, once appellant had sent Simmons out of the apartment after he tried to steal her wallet and she had locked the apartment doors, the evidence was undisputed that

Simmons, while appearing angry at times, had remained outside for hours and told witnesses he was going to wait until appellant let him into the apartment.

While there was disputed evidence, again from appellant's statement to police, about whether Simmons had previously laid hands on appellant, the jury could have reasonably disregarded the portions of her statement where she said that he had, and instead believed her affirmative statement to Detective Overstreet that he had not. *See Hocko v. State*, 590 S.W.3d 680, 692 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("But the jury was not bound by this testimony — rather, as the sole judge of the credibility of the witnesses and the weight to be assigned to their testimonies, the jury was free to disregard Appellant's version of events."). The jury also heard appellant state that when Simmons attempted to open the apartment door with his key, she was the one who opened the deadbolt allowing Simmons to enter the apartment. Appellant admitted that Simmons pushed her out of the way once he entered the apartment and made no aggressive move against her that night. Instead, appellant saw Simmons try to push Mitchell out of the apartment, keeping his back toward appellant throughout the struggle. According to appellant, Simmons did not resort to his fists in his effort to remove Mitchell from the apartment. Additionally, appellant admitted that she grabbed a knife from the kitchen and stabbed Simmons in the back three times without thinking, that it was like she "blacked out." Also, the jury heard appellant admit that she threw the knife she had used to stab Simmons into the bushes outside the apartment. Finally, the jury could see appellant was still angry and irritated at Simmons at the beginning of her statement and remained so throughout both of her statements to the police. They also heard appellant's admission that she could not explain her actions "without making her seem so wrong about it."

Considering appellant's admission that she repeatedly stabbed Simmons in

10

the back, any rational trier of fact could have concluded beyond a reasonable doubt that appellant did not act in self-defense. *See Vasquez v. State*, 2 S.W.3d 355, 358 (Tex. App.—San Antonio 1999, pet. ref'd) (stating that evidence that the defendant inflicted multiple stab wounds in victim's back tended to show that deadly force was not immediately necessary to protect against use of deadly force). This conclusion is reinforced by the fact the jury heard evidence that Simmons left the apartment each time appellant called or attempted to call the police. Based on this evidence, the jury could have determined that appellant did not reasonably believe the use of deadly force was immediately necessary. *See* Tex. Penal Code § 9.32(a)(2) (stating that person is justified in using deadly force if, among other things, she "reasonably believes the deadly force is immediately necessary"); *Fountain v. State*, No. 14-18-00229-CR; 14-18-00231-CR, 2020 WL 3548434, at *4 (Tex. App.—Houston [14th Dist.] June 30, 2020, no pet. h.) ("Moreover, in the absence of an immediate threat, which the jury could have concluded was missing here, threats before the incident are insufficient to conclusively prove self-defense."); *Hocko*, 590 S.W.3d at 692. The jury also heard evidence that Simmons was not armed that night, he had not made an aggressive move against appellant that evening, and he was instead trying to push Mitchell out of the apartment. Based on this evidence, the jury could have reasonably concluded that Simmons was not using, or attempting to use, deadly force against appellant. *See id.* (providing that deadly force is authorized if defendant reasonably believes that the victim was using or attempting to use deadly force against defendant); *Saxton*, 804 S.W.2d at 913–14 (stating that jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony and is entitled to accept or reject any defensive evidence related to self-defense). Therefore, the jury was free to disbelieve appellant's claims supporting a theory of self-defense, and instead rely entirely upon the incriminating portions of appellant's statements. *See Dearborn*,

11

420 S.W.3d at 374 ("Therefore, appellant's statement does not conclusively prove a claim of self-defense."). The fact it did so does not render the evidence insufficient. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating jury can disbelieve witness's recantation of prior testimony); *Johnson v. State*, 421 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Appellant's own statement that he did not conspire to rob Vasquez does not render the evidence to the contrary insufficient."). Because the evidence was legally sufficient to support appellant's conviction, we overrule her fourth issue. *See Hocko*, 590 S.W.3d at 692 (holding evidence legally sufficient to support jury finding essential elements of offense beyond reasonable doubt and finding against the defendant's self-defense claim beyond a reasonable doubt).

## II. The trial court did not abuse its discretion when it refused to include a defense of property instruction in the jury charge.

The trial court included an instruction on self-defense in its proposed charge. Appellant objected to the lack of an instruction regarding the use of deadly force to protect property and submitted a proposed charge instruction.[5] The trial court denied appellant's requested instruction on defense of property. Appellant argues in her first issue that the trial court committed reversible error when it denied her requested instruction because the evidence raised the issue of her right to use

---

[5] Here, appellant's trial counsel raised a general objection that the jury charge failed to include "an instruction regarding deadly force to protect property." Appellant's counsel did not provide argument in support of this request or cite to evidence raising that defensive issue. Counsel did, however, submit a written proposed instruction regarding the use of deadly force to prevent another's imminent commission of burglary or criminal mischief at night. Appellant's proposed instruction contains the following language: "You are instructed that a person commits the offense of burglary if, without the effective consent of the owner, she enters a habitation with intent to commit theft." Appellant's counsel however, had crossed out the word "theft" and had handwritten in a notation saying that a person commits burglary if she enters a habitation with the intent to commit "a felony or an assault." In addition, all of the original definitions in the proposed charge instruction pertaining to theft were crossed out and replaced with handwritten definitions for "felony" and "assault."

deadly force to defend her property from the complainant's imminent commission of burglary, theft during the nighttime, or criminal mischief in the nighttime.

## A.    Standard of review and applicable law

"[A]n accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The defendant's testimony alone may be sufficient to raise the issue and warrant a requested defensive instruction. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). In reviewing whether the trial court erred in refusing to submit a requested defensive instruction, we must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). The jury, and not the trial court, decides whether to accept or reject a properly raised defensive theory. *Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987). If the evidence fails to raise a defensive issue, the trial court commits no error by refusing to submit a requested instruction. *Kunkle v. State*, 771 S.W.2d 435, 443–44 (Tex. Crim. App. 1986). We review the trial court's decision to deny a defensive issue in a jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

A person is justified in using deadly force against another to protect property when (1) she would be justified in using force under Penal Code section

9.41[6], (2) she reasonably believes the deadly force is immediately necessary to prevent burglary[7], theft during the nighttime, or criminal mischief during the nighttime, and (3) she reasonably believes that the property cannot be protected by other means. *See* Tex. Penal Code § 9.42. All three of the statutory circumstances must exist in order for the defendant to be entitled to an instruction on the use of deadly force in defense of property. *Leach v. State*, 983 S.W.2d 45, 47 (Tex. App.—Tyler 1998, no pet.).

### B. There is no evidence supporting the inclusion of a defense of property to prevent theft during the nighttime instruction in the jury charge.

Assuming for purposes of appeal that this issue was preserved by appellant's objection and proposed instruction, we conclude that the trial court did not abuse its discretion when it denied appellant's requested instruction because there was no evidence that Simmons was committing theft when appellant stabbed him. While there is evidence in the record that Simmons attempted to take appellant's wallet, appellant admits in her brief that this occurred hours earlier that day. The evidence instead establishes that hours later a struggle between Simmons and Mitchell began as soon as Simmons entered the apartment and appellant stabbed Simmons in the back soon thereafter. Because there is no evidence in the record that Simmons was in the process of unlawfully appropriating property without the owner's effective

---

[6] Section 9.41 provides that a person in lawful possession of "movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." Tex. Penal Code § 9.41(a).

[7] A person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation with the intent to commit a felony, theft, or an assault. *See* Tex. Penal Code § 30.02(a)(1). An "owner" is defined as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." Tex. Penal Code § 1.07(a)(35)(A). "Possession" of property means "[a]ctual care, custody, control, or management." Tex. Penal Code § 1.07(a)(39).

consent when appellant stabbed him in the back, we conclude that the trial court did not abuse its discretion when it denied appellant's requested defense of property to prevent theft instruction. *See Sparks v. State*, 177 S.W.3d 127, 132–33 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding trial court did not err when it denied defense of property instruction because there was no evidence the victim was attacking or robbing defendant even though there was evidence victim had previous to fatal incident demanded money from defendant).

**C.** **The trial court did not abuse its discretion when it denied appellant's requested defense of property to prevent criminal mischief during the nighttime instruction.**

A person commits the offense of criminal mischief if, without the effective consent of the owner, the person intentionally or knowingly damages or destroys tangible property of the owner. *See* Tex. Penal Code § 28.03(a)(1). On appeal, appellant argues that she could see Simmons "was damaging her property by his cracking the door while attempting to kick it open." Appellant does not point out any other evidence in the record supporting her criminal mischief theory nor has our search revealed any. The evidence in the record establishes that once the apartment door was opened, Simmons immediately began struggling with Mitchell and appellant stabbed him almost immediately thereafter. As a result, any damage to the apartment had been completed before appellant stabbed Simmons in the back. There is no evidence appellant believed that it was necessary to stab Simmons to prevent further damage to the apartment door or to prevent damage to any other property in the apartment. *See Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App.—El Paso 1996, pet. ref'd) (holding evidence was insufficient to raise issue on defense of property because criminal mischief had been completed before defendant's use of deadly force and there was nothing in record suggesting additional criminal mischief was imminent); *Jackson v. State*, 753 S.W.2d 706,

15

710 (Tex. App.—San Antonio 1988, pet. ref'd) (holding defendant not entitled to instruction on defense of property where victim's act of criminal mischief was completed before defendant's use of deadly force and evidence indicated defendant's "sole reason for discharging his shotgun was to protect himself from what he perceived as harm to himself."). We conclude that the trial court did not abuse its discretion when it denied appellant a defensive instruction on defense of property to prevent criminal mischief during the nighttime.

### D. Appellant was not harmed by the denial of a defense of property instruction to prevent Simmons from entering the apartment to commit an assault.

Appellant also argues in her first issue that the trial court abused its discretion when it rejected her request for a defense of property instruction to prevent Simmons from entering the apartment to assault her. Even if the trial court erred when it denied appellant's requested instruction, appellant must still demonstrate that she was harmed as a result. See *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (stating that to establish reversible charge error, a defendant must demonstrate that she was harmed by the error). In evaluating whether a defendant was harmed by an erroneous jury instruction, the degree of harm must be measured by the following factors: (1) the entire jury charge; (2) the state of the evidence; (3) the parties' arguments; and (4) all other relevant record information. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *see French v. State*, 563 S.W.3d 228, 237 (Tex. Crim. App. 2018) ("Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*."). Neither party bears the burden to show harm or lack thereof as a result of the error. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

We conclude appellant was not harmed by the trial court's failure to submit

16

the requested instruction. The trial court did submit, and the jury rejected, appellant's self-defense theory. Here, the focus of appellant's requested defense of property instruction is on the same conduct as the self-defense claim, appellant's belief that Simmons was about to assault her. Therefore, the jury's rejection of appellant's self-defense claim negates appellant's claim for the use of deadly force in defense of property and she was not harmed by the trial court's failure to submit her requested instruction. *Cf. Wooten v. State*, 400 S.W.3d 601, 609–10 (Tex. Crim. App. 2013) (holding defendant was not harmed by trial court's failure to give sudden passion instruction where jury had rejected defendant's claim that he reasonably believed the use of deadly force was immediately necessary in self-defense, and both defenses focused on the interaction between defendant and victim).

Having rejected each argument raised in appellant's first issue, we overrule that issue.

## III. The trial court did not abuse its discretion when it denied appellant's request for a lesser-included offense instruction on manslaughter.

Appellant argues in her second issue that the trial court reversibly erred when it denied her requested instruction on the lesser-included offense of manslaughter.

A charge on a lesser-included offense should be given when (1) the lesser-included offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, she is guilty only of the lesser offense. *Sweed v. State*, 351 S.W.3d 63, 67–68 (Tex. Crim. App. 2011). For the second part of the analysis, we evaluate whether some evidence exists from which a rational jury could acquit the defendant of the greater offense while convicting

17

the defendant of the lesser-included offense. *Sweed*, 351 S.W.3d at 68. The evidence must establish the lesser-included offense as a "valid, rational alternative to the charged offense." *Id.* To make this determination, we review all of the evidence introduced during the trial. *Id.* We review a trial court's failure to submit a lesser-included offense instruction for an abuse of discretion. *Steele v. State*, 490 S.W.3d 117, 126 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The first requirement is met here because manslaughter is a lesser-included offense of murder. *See Cavazos v. State*, 382 S.W.3d 377, 382–84 (Tex. Crim. App. 2012). The second requirement, however, is not met. First, appellant argues that the evidence supports a manslaughter instruction because there is some evidence in the record that she acted under the influence of sudden passion arising from an adequate cause. Evidence that a defendant acted under the influence of sudden passion is no longer relevant to determining whether a defendant is guilty only of the lesser-included offense of manslaughter. *See* Tex. Penal Code § 19.02(d) ("At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause."); *Wooten*, 400 S.W.3d at 605 ("Under the current statutory scheme, the question of whether a defendant killed while under the immediate influence of sudden passion is a punishment issue.").

Next, appellant argues that the location of Simmons' fatal injury, which she describes as a "freak accident," the manner in which she stabbed Simmons, which she describes in her brief as hitting him, and her lack of reflection before stabbing Simmons all support the submission of a manslaughter lesser-included offense instruction. We disagree. Here, the evidence establishes that appellant went to the kitchen, grabbed a knife, and when it appeared Simmons was pushing Mitchell out of the apartment door, she stabbed Simmons three times in the back. These types

18

of actions are clearly dangerous to human life and they will not rationally support a finding that her conduct was merely reckless. *See Martinez v. State*, 16 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("The commission of an act clearly dangerous to human life suffices to support a conviction for murder under section 19.02(b)(2) of the Texas Penal Code and is not an accidental or reckless act."). In addition, appellant's assertion that she acted in self-defense, an intentional act, is inconsistent with an instruction on manslaughter, which is based on reckless conduct. *See Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011) ("by arguing self-defense, a defendant is arguing that his actions were justified, and therefore he did not act recklessly"); *Martinez*, 16 S.W.3d at 848 (stating that "one cannot accidentally or recklessly act in self-defense").

Because appellant has not cited any affirmative evidence in the record that would have negated her intent to kill at the time she stabbed Simmons, appellant did not satisfy the second requirement for an instruction on the lesser-included offense of manslaughter. Therefore, the trial court did not abuse its discretion when it denied appellant's lesser-included offense instruction. We overrule appellant's second issue.

**IV. The trial court committed no error when it did not, sua sponte, submit an instruction in the jury charge instructing the jury that the State had the burden to prove beyond a reasonable doubt that self-defense did not apply to appellant's conduct.**

Appellant, citing *Saxton v. State*, argues in her third issue that the trial court erred when it did not, sua sponte, instruct the jury that the State had the burden to "prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct." 804 S.W.2d at 912.

Appellant's reliance on *Saxton* is misplaced. *Saxton* involved a sufficiency challenge to a murder conviction where self-defense was claimed. In *Saxton*, the

19

Texas Court of Criminal Appeals, stated:

> Arguably, § 2.03(d) appears to impose a burden on the State to directly refute a defense raised at trial . . . but the Practice Commentary to § 2.03(d) and other case law indicate otherwise . . . . [T]he State has the burden of *persuasion* in disproving the evidence of self-defense. That is not a burden of *production*, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt.

*Saxton*, 804 S.W.2d at 913; *see also* Tex. Penal Code § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted."). Further, in *Saxton*, the Court of Criminal Appeals discussed the distinction between the burden of persuasion versus burden of production. 804 S.W.2d at 913. It went on to hold that the State has the burden of persuasion to prove its case beyond a reasonable doubt, and a "verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Saxton*, 804 S.W.2d at 914.

The State is not required to negate the existence of the defense. *See* Tex. Penal Code § 2.03(b) ("The prosecuting attorney is not required to negate the existence of a defense in the accusation charging commission of the offense."). The trial court is however, required to instruct the jury that reasonable doubt as to the existence of the defense shall require acquittal. *See* Tex. Penal Code § 2.03(d). The trial court, as required by Texas Penal Code § 2.03(d), instructed the jury in the abstract portion of the charge as follows:

> With regard to the presumption of the necessity of deadly force, you are further instructed that:
>
> (1) the presumption applies unless the state proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist;
>
> (2) if the state fails to prove beyond a reasonable doubt that the facts

20

giving rise to the presumption do not exist, the jury must find that the presumed fact exists;

(3) even though the jury may find that the presumed fact does not exist, the state must prove beyond a reasonable doubt each of the elements of the offense charged; and

(4) if the jury has a reasonable doubt as to whether the presumed fact exists, the presumption applies and the jury must consider the presumed fact to exist.

Then, in the application portion of the charge, the trial court instructed the jury:

Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Deaira Pitts, did then and there unlawfully, intentionally or knowingly cause the death of Michael Wayne Simmons, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of Michael Wayne Simmons it reasonably appeared to the defendant that her life or person was in danger and there was created in her mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Michael Wayne Simmons, and that acting under such apprehension and reasonably believing that the use of deadly force on her part was immediately necessary to protect herself against Michael Wayne Simmons's use or attempted use of unlawful deadly force, she stabbed Michael Wayne Simmons, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.

If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that she was in danger of death or serious bodily injury, or that the defendant, under the circumstances as viewed by her from her standpoint at the time, did not reasonably believe that the degree of force actually used by her was immediately necessary to protect herself against Michael Wayne Simmons's use or attempted use of deadly force, then you should find against the defendant on the issue of self-defense.

21

The trial court properly instructed the jury that the State held the final burden of persuasion on the issue of self-defense, and that if there was a reasonable doubt on that issue it was to find the defendant not guilty. *See* Tex. Penal Code § 2.03(d). Because the trial court properly instructed the jury on the law applicable to the case, there is no error in the charge as to the self-defense burden instruction. Concluding there is no error in the charge, we need not consider the *Almanza* analysis. We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).